UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Michael D. Damron,

      Plaintiff,

  vs.

Joan Fabian, Commissioner, Minnesota
Department of Corrections; Connie
Roerich, Warden, MCF-Faribault; Louis
Stender, Assoc. Warden; Bruce Reiser,
Assoc. Warden; Michael Smith; Chris
Estes; John Melvin; Michael Grundman;
Allen McColley; Winifred Hughes;
Debra Stoeckel-Milke; Susan Schema;
Ralph Schmidt; James Morris; Thomas
Schloesser; Brian Paul; Mark Cervenka;
Christopher Ernste; Joanne Popken;
William Stransky; John Doe; Jane Doe;
and Richard Doe,

      Defendants,     Civ. No. 04-3865  (RHK/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motion for Summary Judgment.[1]   The

---

[1]The Plaintiff has also filed a Motion for Entry of Default Judgment, assertedly because "[n]one of the Defendants, except for Commissioner Fabian, answered Plaintiff's complaint, in the time allowed, nor have they ever filed an answer." Accordingly, he contends that "Judgment should be granted in favor of the Plaintiff, as a matter of law."  See, Docket No. 33, at 1.   However, we note that all of the Defendants have filed an Answer, collectively, in their official capacities. See, Docket No. 3.  We also note there is no showing, in this Record, that the Defendants were ever personally served with process pursuant to Rule 4(e), Federal Rules of Civil Procedure.

As the Defendants have pled and defended in their official capacities, we recommend that the Plaintiff's request for an entry of a Default Judgment be denied as without merit.  See, In re Jones Truck Lines, Inc., 63 F.3d 685, 688 (8th Cir. 1995)("The entry of default judgment is not favored by law, [United States ex rel. Time Equip. Rental & Sales, Inc. v.] Harre, 983 F.2d [128,] 130 [(8th Cir. 1993)], and should be a 'rare judicial act,'"), citing Comiskey v. JFTJ Corp., 989 1007, 1009 (8th Cir. 1993), quoting Edgar v. Slaughter, 548 F.2d 770, 773 (8th Cir. 1977); American States Insurance Corporation v. Technical Surfacing, Inc., 178 F.R.D. 518, 521 (D. Minn. 1998)("Accordingly, '"[w]hen a defendant appears and indicates a desire to contest an action, a court may exercise its discretion to refuse to enter default, in accordance with the policy of allowing cases to be tried on their merits.'"), citing Wendt v. Pratt, 154 F.R.D. 229, 230 (D. Minn. 1994), quoting Lee v. Brotherhood of Maintenance of Way Employees, 139 F.R.D. 376, 381 (D. Minn. 1991), citing, in turn, 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, §2593, at p. 411.

Plaintiff appears pro se, and the Defendants have appeared by Elizabeth Richter Scheffer, Assistant Minnesota Attorney General.

For reasons which follow, we recommend that the Defendants' Motion be granted.

## II.   Factual and Procedural Background

At the time that this action was commenced, the Plaintiff was a prisoner in a North Dakota penitentiary, who had served part of his sentence, from November of 2001, to December of 2002, in the State of Minnesota pursuant to an interstate compact agreement.  See, Complaint, Docket No. 1, at ¶¶4, 31; Affidavit of Brent Wartner ("Wartner Aff."), Docket No. 18, Ex. C.  The Plaintiff's Complaint was brought under Title 42 U.S.C. Section 1983, and alleges violations of his Fourth, Eighth, and Fourteenth Amendment rights, which allegedly occurred while he was incarcerated in the State of Minnesota.

In June of 1997, the Plaintiff was convicted in North Dakota of property theft, and he was sentenced to ten (10) years in prison.  Wartner Aff., Ex. B.  He began serving his sentence in the North Dakota State Penitentiary, and subsequently requested transfer to a Minnesota Correctional Facility, pursuant to an interstate compact agreement, ostensibly for the educational opportunities available.  Complaint,

¶¶4-5.  In 2001, he was transferred to the Minnesota Correctional Facility, at St. Cloud ("MCF-St. Cloud").  <u>Id.</u>

The Plaintiff claims that, upon arriving at MCF-St. Cloud, he was informed that he would not be allowed his requested educational opportunities or internships, nor would he be allowed to transfer to a facility that offered opportunities for internships or computer courses, and that he then requested a transfer back to North Dakota.  <u>Id.</u> at ¶6.  The Plaintiff was subsequently transferred to the Minnesota Correctional Facility, at Moose Lake ("MCF-Moose Lake"), where he claims he was told that he could resume his correspondence courses but, he contends, that he was again denied those educational opportunities.  <u>Id.</u> at ¶10.  The Plaintiff alleges that he again requested to be returned to North Dakota.  <u>Id.</u>  The Plaintiff was then transferred to the Minnesota Correctional Facility, at Faribault ("MCF-Faribault"), where, he claims, he was again "denied any education and not allowed to work on correspondence course [sic]."  <u>Id.</u> at ¶12.  He made a third request to return to North Dakota, and he alleges that he was informed that he would be sent back.  <u>Id.</u>

On August 19, 2002, while at MCF-Faribault, the Plaintiff was asked to provide a DNA sample.  <u>Id.</u> at ¶15.  The Plaintiff refused, and contacted an individual named J. Lee Berget ("Berget"), who allegedly contacted Bruce Reiser ("Reiser"), the

- 4 -

Associate Warden.  Id.  According to the Plaintiff, Reiser informed Berget that the issue would be put on hold until August 27, 2002, when the Plaintiff had a scheduled Hearing.  Id.  On August 20, 2002, the Plaintiff was informed that he was required to provide a DNA sample, which he refused, stating that he was an interstate transfer, and that he was not required to provide a sample.  Id. at ¶16; Wartner Aff., Ex. D.  Michael Smith ("Smith"), who, allegedly, is a staff member at MCF-Faribault, contacted the Interstate Compact Coordinator so as to determine if the Plaintiff was required to submit a sample.  Wartner Aff., Ex. D.  Smith was informed that the Plaintiff was required to comply, and the Plaintiff was ordered to provide a sample. Id.  The Plaintiff again refused, and he was escorted to segregation for disobeying a direct Order.  Id.

On August 22, 2002, the Plaintiff was again ordered to provide a DNA sample via a buccal swab.  Complaint, ¶17; Wartner Aff., Ex. E.  The Plaintiff again refused, and he was informed that a "cell entry" would be conducted, and a DNA blood draw would be completed.  Wartner Aff., Ex. E.  According to the Plaintiff:

> [The prison officials] came to Plaintiff's cell and started videotaping Plaintiff, [the prison officials] ordered Plaintiff to lie on his face on the cot, with his hands behind him, they then applied wrist cuffs, and leg and ankle chains.  They

then placed a hood over his head and ordered him to walk
with them.  Plaintiff did not struggle or fight.

\*      \*      \*

 Defendants walked Plaintiff down the hall, down steps and
then Plaintiff was picked up, turned over, face downwards,
and was being lowered to the floor.  However, Defendants
dropped Plaintiff, at least 2-3 feet to the floor, Plaintiff
landed, hitting his forehead first on a board on the floor, his
neck snapped back, he screamed.  Defendants then drew
blood from Plaintiff and then marched him back to his cell.
The wrist cuffs, and leg chains were then removed.

Complaint, at ¶21.

The incident reports, which have been submitted by the Defendants, tell a different

story.

According to the incident report of Debra Stoeckel ("Stoeckel"), the Plaintiff

was restrained and moved to a segregation room where he was placed on a restraining

board.  Second Wartner Aff., Docket No. 29, Ex A.  Jeanne Popken ("Popken"), who

is a technician, entered the room, and used a blood lancet to pierce the Plaintiff's

finger, and blot the resulting blood onto a DNA collection card.  Id., Ex. C.  Once the

blood draw was complete, Winnie Hughes ("Hughes"), whois a nurse, asked the

Plaintiff if he was okay, to which he replied, "I think I am."  Id., Ex. B.  The Plaintiff

was then returned to his cell.  Id., Ex. A.

According to the Plaintiff, as a result of being dropped on his neck, he has suffered neck pain and worsening headaches.  Complaint, at ¶30.  He claims that the Defendants ignored his complaints, and that he has since suffered "sleeplessness and horrible headaches."  Id.  In December of 2002, the Plaintiff was returned to North Dakota, where he served the remainder of his sentence.  Wartner Aff., Docket No. 18, Ex. C.  The Plaintiff further alleges that, after having returned to North Dakota, he had tests -- including an MRI -- performed, which showed that he had sustained permanent neck damage, which has resulted in continuing daily pain, and that he will require surgery to relieve that pain.  Complaint, at ¶31.

Throughout the course of this litigation, the Plaintiff has filed Motions to Compel the Defendants to produce his medical records, which relate to his incarceration in North Dakota.  See, Docket Nos. 15, 32 and 34.  We denied the Plaintiff's Motions, finding no showing that the Defendants had possession or control of his medical records from North Dakota.  See, Docket No. 20, at 4-5; Docket No. 39, at 4.  The Plaintiff has also represented that he had arranged to have a new MRI performed, but no results have ever been submitted.

On August 20, 2004, the Plaintiff filed his Complaint, asserting that:  1) he was denied procedural and substantive due process, because he was not informed that he

- 7 -

would be unable to pursue educational opportunities, and he was not informed that he would be required to provide a DNA sample; 2) Minnesota "was in breach of contract," because it "continuously denied Plaintiff any education or even to finish his correspondence courses which Minnesota was well aware of prior to Plaintiff's request to transfer due to educational and internship and/or job opportunities"; 3) he was denied due process because he was denied the opportunity to speak to an attorney regarding whether he was required to provide a DNA sample; 4) his Equal Protection rights, under the Fourteenth Amendment, were violated because the Defendants obtained a DNA sample via a blood draw, whereas buccal swabs were used on Minnesota inmates; 5) the Defendants committed an illegal search and seizure, under the Fourth Amendment, by collecting a sample of his DNA; and 6) the Defendants' "negligent mis-handling" constituted cruel and unusual punishment in violation of the Eighth Amendment. Complaint, ¶¶ 7-8, 13, 17, 22, 24, 26-27, 29, 33. He seeks $1,000,000.00 in compensatory damages for his neck injury, plus all medical and surgical expenses, and $2,000,000.00 in punitive damages, although he does not specify the basis for that request. Id. at 12. The Plaintiff also seeks the return of his DNA sample, along with the destruction of all DNA signatures. Id. at 13.

### III. Discussion

- 8 -

A.    <u>Standard of Review</u>.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, --- U.S. ---, 125 S.Ct. 1860 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003); <u>United Fire & Casualty Co. v. Garvey</u>, 328 F.3d 411, 413 (8th Cir. 2003).  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned Parenthood of Minnesota/South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 1004); <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003)

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."  Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir.

2005); <u>Davis v. U.S. Bancorp</u>, 383 F.3d 761, 768 (8th Cir. 2004); <u>Bell Lumber and Pole Co. v. United States Fire Ins. Co.</u>, 60 F.3d 437, 441 (8th Cir. 1995).

B.   <u>Legal Analysis</u>.

1.   <u>The Plaintiff's Due Process Claims</u>.   The Plaintiff claims that the Defendants' collection of a DNA violated his procedural and substantive due process rights.   Specifically, he alleges that as an individual, who was convicted in North Dakota, he was subject to the laws of North Dakota, and not to the Minnesota statutory provision which mandated the collection of a DNA sample from certain offenders.   He also contends that he was not informed that he would be required to provide a DNA sample, and that, when he refused, he should have been returned to North Dakota.

a.   <u>Procedural Due Process</u>.  Procedural due process  requires that the government provide fair procedures by which it gives its citizens an opportunity to prevent a loss of life, liberty, or property.  <u>Birkenholtz v. Sluyter</u>, 857 F.2d 1214, 1216 (8th Cir. 1988), citing <u>Hurtado v. California</u>, 110 U.S. 516, 531 (1884).  "'In a procedural due process claim, it is not the deprivation of property or liberty which is unconstitutional; it is the deprivation of property or liberty **without**

**due process of law** -- without adequate procedures.'" <u>Id.</u>, quoting <u>Daniels v.</u> <u>Williams</u>, 474 U.S. 327, 339 (1986)(Stevens, J., concurring)(emphasis in original).

The Plaintiff argues that the statutory provision, which required the collection of a DNA sample, did not apply to him, but that, if it did, he should have been returned to North Dakota, rather than be forced to give a DNA sample. The Plaintiff also argues that he was entitled to a Court Hearing, prior to the Defendants' forcibly drawing his blood for a DNA sample.

The applicable statute provides, in part, as follows:

> Subd. 2.    Before Release.    The commissioner of corrections or local corrections authority shall order a person to provide a biological specimen for the purpose of DNA analysis before completion of the person's term of imprisonment when the person has not provided a biological specimen for the purpose of DNA analysis and the person:
>
> (1)    was convicted of violating or attempting to violate any of the following or initially charged with violating one of the following sections and convicted of another offense arising out of the same set of circumstances:
>
> *     *     *
>
> (iv)    robbery under section 609.24 or aggravated robbery under section 609.245;
>
> *     *     *

> (3)     is serving a term of imprisonment in this state under
> a reciprocal agreement although convicted in another state
> of an offense described in this subdivision or a similar law
> of the United States or any other state. The commissioner
> of corrections or local corrections authority shall forward
> the sample to the bureau of criminal apprehension.

Minnesota Statutes Section 609.117, Subdivision 2 (2002).

The Plaintiff's claim, that the statute did not apply to him, is wholly without merit.  The

Plaintiff was convicted in North Dakota of property theft, which is a crime that the

Minnesota Department of Corrections ("DOC") has concluded was sufficiently similar

to Minnesota Statutes Section 609.24, which is one of the enumerated offenses under

the DNA collection statute.

Notably, the Plaintiff does not contend that his conviction was outside the

scope of the offenses listed in the statute, and a cursory review of the relevant

elements confirms that the Plaintiff was convicted under a similar law in North Dakota.

Compare, Minnesota Statutes Sections 609.24 and 609.245 (1997), with North Dakota

Century Code Section12.1-23-02 (1997).  Moreover, the Plaintiff clearly fell within the

class of prisoners covered by the statute, in that he was "serving a term of

imprisonment in this state under a reciprocal agreement although convicted in another

state * * * ."  See, Minnesota Statutes Section 609.117, Subdivision 3.  The Plaintiff's

claim, that the statute was not in effect at the time he transferred to Minnesota, is

likewise without merit, as the relevant statutory provision went into effect in May of 1999 -- over two (2) years before the Plaintiff's transfer to Minnesota's correctional system.   See, Minnesota Laws, Chapter 216, Article 3, Sections 7 and 8 (May 25, 1999).

The Plaintiff also claims that he should have been returned to North Dakota when he refused to submit a DNA specimen, arguing that his transfer to Minnesota was conditioned on providing such a specimen, and that his refusal meant that he was not accepted for transfer.   The Plaintiff provides no authority for that novel position, and the clear statutory language counters that argument.   The statute clearly encompasses prisoners who are convicted in another state, and who are serving a sentence in Minnesota pursuant to a reciprocal agreement -- as was the case with the Plaintiff.   See, Minnesota Statutes Section 609.117, Subdivision 3; Complaint, ¶4. There is nothing in the language of the statute, nor any case interpreting that statute, which sets forth the conditional transfer arrangement that is urged by the Plaintiff.

The Plaintiff also asserts that he was entitled to a Hearing as to the legality of being required to provide a DNA sample.   As with his previous arguments, the Plaintiff provides no supporting authority that would entitle him to such a Hearing, or that would make the application of Minnesota Statutes Section 609.117 anything other than

mandatory.  As such, he has simply failed to identify any deprivation of procedural due process.  See, <u>Birkenholtz v. Sluyter</u>,, supra at 1216; see also, <u>Parratt v. Taylor</u>, 451 U.S. 527, 537-44 (1981)(holding that the government must provide remedies that it promised would be available), overruled on other grounds, <u>Daniels v. Williams</u>, 474 U.S. 327, 347-48 (1986)(holding that <u>Parratt v. Taylor</u>, supra, was overruled to the extent that it implied negligent acts were cognizable under Section 1983); see also, <u>Walker v. Kansas City, Missouri</u>, 911 F.2d 80, 94 (8th Cir. 1990), cert. denied, 500 U.S. 941 (1990)("'[R]egulations [that] place no substantive limitations on official discretion * * * create no * * * interest entitled to protection under the Due Process Clause.'"), quoting <u>Olim v. Wakinekona</u>, 461 U.S. 238, 249 (1983).  We conclude that there is no genuine issue of material fact, and therefore, the Defendants are entitled to Judgment as a matter of law on this claim.

        b.   <u>Substantive Due Process</u>.  "'To establish a substantive due process claim, [a plaintiff] must show that the government action was truly irrational, that is, something more than * * * arbitrary, capricious, or in violation of state law.'" <u>Graning v. Sherburne County</u>, 172 F.3d 611, 617 (8th Cir. 1999), quoting <u>Anderson v. Douglas County</u>, 4 F.3d 574, 577 (8th Cir. 1993), cert. denied, 510 U.S. 1113 (1994).  The government action in question must shock the conscience or be otherwise

offensive to notions of fairness and human dignity.  See, <u>Moran v. Clarke</u>, 296 F.3d 638, 647 (8th Cir. 2002); <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th Cir. 1998).  A substantive due process claim may also be presented when the State acts in a manner which "infringes 'fundamental' liberty interests, without narrowly tailoring that interference to serve a compelling state interest."  <u>Weiler v. Purkett</u>, supra at 1051, citing <u>Reno v. Flores</u>, 507 U.S. 292, 301-02 (1993).

Based upon the Plaintiff's Complaint, it is not entirely clear what he alleges as forming the basis of his substantive due process claim but, given the context of his claim, he appears to contend that the blood draw, itself, "shocks the conscience," and therefore, that action violated his substantive due process rights.  In 1995, a similar due process challenge was presented under the State of Minnesota's DNA collection statute[2] and, in that case, it was observed that "[t]he Supreme Court has concluded that taking a blood sample * * *, when done properly, does not offend the Due Process Clause."  <u>Kruger v. Erickson</u>, 875 F. Supp. 583, 587 (D. Minn. 1995), aff'd,

---

[2]The statute at issue in that case was Minnesota Statutes Section 609.3461 (1994), the predecessor statute to the one at issue here.  See, Minn. Laws, c. 216, art. 3, §§7, and 8 (1999).  The pertinent language is identical, except that the class of prisoners, who are required to submit a DNA sample, was limited to individuals convicted of sex crimes.  See, <u>Minnesota Statutes Section 609.3461, Subdivision 2</u> (1994).

77 F.3d 1071 (8th Cir. 1996), citing <u>Breithaupt v. Abram</u>, 352 U.S. 432, 433 (1957). The <u>Kruger</u> Court also noted "that 'a blood test taken by a skilled technician is not such conduct that shocks the conscience * * * nor such a method of obtaining evidence that it offends a sense of justice.'" <u>Id.</u>  Based on the evidence submitted in the <u>Kruger</u> case, the Court found that the procedure employed was performed according to medically acceptable protocols, and that a trained technician drew blood from the allegedly aggrieved party, and concluded that the procedure did not violate substantive due process.  <u>Id.</u>

    As in <u>Kruger</u>, the procedure employed here, to obtain a DNA sample from the Plaintiff, was performed according to medically acceptable protocols, and performed by a trained technician.  See, <u>Wartner Aff.</u>, <u>Docket No. 18</u>, Ex. G (setting forth procedures for collection of DNA specimen, and requiring that the specimen be obtained by a qualified medical professional); <u>Second Wartner Aff.</u>, <u>Docket No. 29</u>, Ex. B (informational report filed by registered nurse noting that the blood draw was completed by a technician and that the nurse assessed the Plaintiff immediately following the draw).  The Record is simply devoid of any evidence which creates a genuine issue of material fact concerning whether the procedure involved in obtaining the DNA sample from the Plaintiff violated his substantive due process rights.

Accordingly, the Defendants are also entitled to Judgment as a matter of law on this claim.

        2.    <u>The Plaintiff's Equal Protection Claim</u>.    The Fourteenth Amendment requires that the government treat similarly situated individuals alike. <u>Rouse v. Benson</u>, 193 F.3d 936, 942 (8th Cir. 2004), citing <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 439 (1985).  In order to sufficiently state an equal protection claim, a prisoner must show that he is somehow being treated differently than a similarly situated class of inmates, that the different treatment impinges on one of his fundamental rights, and that the different treatment  bears no rational relation to any legitimate penal interest.  See, <u>Murphy v. Missouri Dept. of Corrections</u>, 372 F.3d 979, 984 (8th Cir. 2004), cert. denied, 543 U.S. 991 (2004), citing <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th Cir. 1998)[en banc].

        The Plaintiff claims that he was treated differently than Minnesota inmates, because his DNA sample was obtained via a blood draw, whereas other Minnesota inmates had specimens taken via a buccal swab.  His claim is wholly without merit. The Plaintiff was first asked to submit a specimen via a buccal swab, and then was subsequently ordered to do so.  <u>Wartner Aff.</u>, Ex. D.  It was only after he refused several direct orders to submit a sample, that the Defendants organized a cell entry

team, for the purpose of obtaining the sample by a blood draw.  Id., Ex. E.  The Plaintiff has simply failed to adduce any evidence which shows that he was treated disparately from other prisoners -- in particular, the class of prisoners who refuse to provide DNA samples via a buccal swab.  Moreover, the Defendants have submitted evidence reflecting that such a procedure is related to a legitimate penological interest. In an Affidavit, Stoeckel averred as follows:

> As a general rule, the use of a blood draw method to obtain a biological sample from an offender is probably a safer procedure than use of a cheek swab.  Unlike a buccal swab, a blood draw eliminates any potential risk of the offender biting, spitting, or similarly assaulting health staff.

Affidavit of Stoeckel, Docket No. 28, ¶3.

There is simply no triable issue as to this claim, and accordingly, the Defendants are entitled to Judgment as a matter of law.

     3.   The Plaintiff's Fourth Amendment Claim.  Individuals have a reasonable expectation of privacy in the personal information their body fluids contain. Glover v. Eastern Nebraska Community Officer of Retardation, 686 F.Supp. 243, 250 (D.Neb. 1988), aff'd, 867 F.2d 461 (8th Cir. 1989), cert. denied, 493 U.S. 932 (1989). Compulsory administration of a blood test "plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment."  Schmerber v. California,

- 19 -

384 U.S. 757, 767 (1966).  As such, mandatory blood testing must comply with the standards of reasonableness imposed by the Fourth Amendment.  Id. at 767-68.  However, a prisoner's Fourth Amendment rights are limited by institutional security needs, and by the prisoner's reduced expectation of privacy.  See, Lyon v. Farrier, 727 F.2d 766, 769 (8th Cir. 1984), cert. denied, 469 U.S. 839 (1984); Kruger v. Erickson, supra at 587.

Here, the Plaintiff claims that there was no probable cause, nor any reasonable suspicion, to allow the Defendants to obtain a DNA sample.  The Kruger Court, supra, was presented with a similar claim, and held that the procedure at issue served the legitimate government purpose of assisting the investigation, and the prosecution, of crimes.  Kruger v. Erickson, supra at 588.  The Kruger Court weighed the value of the search against the governmental interest, and found that the invasion was minimal, and was outweighed by the pressing need to conduct a search.  Id.  We are persuaded by that Court's reasoning, and find it fully applicable to the case before us.

The procedure, which is at issue here, fulfills the identical governmental interests in assisting in the investigation, and the prosecution of crimes.  The method of obtaining the DNA sample is identical and minimally invasive.  Moreover, the Plaintiff had available an even less invasive procedure for submitting the sample -- the buccal

swab -- but his continued refusal necessitated the blood draw, of which he complains. The Plaintiff has failed to provide evidence which could lead to a conclusion that the procedure, which was involved in obtaining a DNA sample, was unreasonable under the Fourth Amendment.  The Defendants are therefore entitled to Judgment as a matter of law on this claim as well.

      4.   <u>The Plaintiff's Eighth Amendment Claim</u>.  The Eighth Amendment requires that prison officials provide humane conditions of confinement.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).  Along with prohibiting barbarous physical punishment, the Eighth Amendment prohibits unnecessary and wanton infliction of physical pain, without any penological justification.  <u>Hudson v. McMillian</u>, 503 U.S. 1, 5-6 (1992).  In assessing an Eighth Amendment claim alleging excessive force, a Court must ask both if "the officials act[ed] with a sufficiently culpable state of mind," and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).

The Plaintiff contends that the Defendants violated his Eighth Amendment rights by dropping him on his head, which in turn, caused the Plaintiff to experience a serious neck injury.  The Plaintiff's claim, however, fails under both the subjective, and objective, components of the relevant Eighth Amendment analysis.

The Plaintiff has alleged that the Defendants' conduct was "performed knowingly, intentionally and maliciously, and motivated by evil intent with callous and reckless indifference to the rights of the Plaintiff," <u>Complaint</u>, at ¶34, but there is simply no evidence in the Record that supports the allegation. Likewise, there is no evidence, offered by the Plaintiff, to support his assertion that he suffered a serious neck injury, or that he was dropped in the process of obtaining the blood draw. The Plaintiff has had ample opportunity to obtain medical records that would corroborate his claim, and his failure to do so leaves us with no option but to conclude that there is no genuine issue of material fact.

Here, the only submissions, which were provided by the Plaintiff in support of his claims that he was injured, are his unsworn representations that he has been unsuccessful, thus far, in obtaining his medical records from North Dakota, and that he arranged for an MRI to be performed in the middle part of June of 2005, but we note that he has failed to provide those results, if they exist, to this Court. On the other hand, the Defendants have submitted evidence showing that the blood draw went smoothly, and that the Plaintiff indicated that he thought he was okay following the procedure. See, <u>Wartner Aff.</u>, Exs. A and C. Nowhere in the incident reports, which have been submitted by the Defendants, is there any indication that the Plaintiff was

dropped, or that he was screaming in pain.  In the absence of any scintilla of evidence

to support his claims of any actual, or ongoing,  neck injury, the Defendants are

entitled to Judgment as a matter of law on this claim.

      5.    <u>The Defendant's Eleventh Amendment Defense as to the Plaintiff's Claims Regarding His Educational Opportunities</u>.

      The Defendants additionally assert that the Plaintiff's claim, namely,

that the Defendants failed to offer him post-secondary educational opportunities, is

barred by the State of Minnesota's Eleventh Amendment immunity.  See, <u>Complaint</u>,

at ¶13.  The Defendants contend that the Plaintiff seeks only monetary damages related

to that claim.[3]  In an action under Title 42 U.S.C. Section 1983, a public servant may

be sued in an official, or in an individual capacity, or both.  <u>Johnson v. Outboard

Marine Corp.</u>, 172 F.3d 531, 535 (8th Cir. 1999).  A suit against a public employee in

that person's official capacity is merely a suit against the public employer.  <u>Id.</u>, citing

<u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985).  The Eleventh Amendment protects

the State, and the arms of the State, from liability for monetary damages in a Section

---

[3]The Defendants note that the Plaintiff does request injunctive relief, but that the relief requested -- the return of his DNA sample and destruction of all DNA signatures -- is wholly unrelated to his claims relating to his educational opportunities.  In fact, the Plaintiff does not appear to request any relief, as to his alleged lack of education opportunities.

1983 action.  See, <u>Hadley v. North Arkansas Community Technical College</u>, 76 F.3d 1437, 1438  (8th Cir. 1996), cert. denied, 519 U.S. 1148 (1997)(stating that a State Agency or its officials may invoke Eleventh Amendment immunity, if the practical result of a suit would result in judgment against the State itself).  Such immunity also extends to State officials who are named as individual defendants acting in their official capacity.  <u>Id.</u>  When the action is against the office and not the person, there is no difference from a suit against the State itself.  See, <u>Hafer v. Melo</u>, 502 U.S. 21, 25-26 (1991); <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 71 (1989).

MCF-Faribault is operated under the auspices of the Minnesota Department of Corrections ("DOC"), which is a subdivision of the State of Minnesota.  Defendants are employees of the DOC, and therefore, are entitled to Eleventh Amendment immunity because they are officials employed by the State.  See,  <u>Hadley v. North Arkansas Community Technical College</u>, supra at 1438.  The Plaintiff does not allege any waiver of Eleventh Amendment immunity by any of the Defendants, and a review of the Record does not disclose any such waiver by the State.  See, <u>Faibisch v. University of Minnesota</u>, 304 F.3d 797, 800 (8th Cir. 2002)("To waive sovereign immunity, a state must make a clear, unequivocal statement that it wishes to do so.").  Therefore, we find that the Plaintiff's claim against the Defendants, as to his

- 24 -

educational opportunities, is barred by the Eleventh Amendment to the extent that the Plaintiff seeks monetary damages for any actions taken in an official capacity.

In sum, finding that the Defendants are entitled to Judgment on each of the Plaintiff's claims, we recommend that his Complaint against the Defendants be dismissed with prejudice.

NOW, THEREFORE, It is --

RECOMMENDED:

1.  That the Defendants' Motion for Summary Judgment [Docket No. 26] be granted.

2.  That the Plaintiff's Motion for Entry of Default Judgment [Docket No. 33] be denied.

Dated:  February 17, 2006                     s/Raymond L. Erickson

                                              Raymond L. Erickson
                                              CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March**

**6, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 6, 2006,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.